[Cite as *State v. Pearson*, 2019-Ohio-740.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 18CA0039-M |
|---|---|
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CASWELL PEARSON, JR. | MEDINA MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellee | CASE No. 17 TRC 05214 |

DECISION AND JOURNAL ENTRY

Dated: March 4, 2019

CARR, Judge.

**{¶1}** Appellant the State of Ohio appeals from the judgment of the Medina Municipal Court granting Defendant-Appellee Caswell Pearson, Jr.'s motion to suppress. This Court reverses and remands for proceedings consistent with this opinion.

I.

**{¶2}** On August 25, 2017, Trooper Harold McCumbers with the Ohio State Highway Patrol was a uniformed officer working at a sobriety checkpoint in Brunswick. According to a media release, the checkpoint was "planned to deter and intercept impaired drivers." That evening, traffic traveling eastbound on State Route 303 towards Warren Drive encountered the checkpoint.

**{¶3}** Around 10:00 p.m., Pearson drove into the checkpoint area. Prior to Pearson reaching Trooper McCumbers, Trooper McCumbers could already smell the odor of marijuana. Trooper McCumbers walked to the driver's side of Pearson's vehicle and could smell the odor of

burnt marijuana coming from inside the vehicle. In addition, Pearson had red, bloodshot eyes and his speech was slow or delayed. Pearson admitted to smoking marijuana within two and a half hours of driving through the checkpoint.

{¶4} Based upon these signs of impairment, Trooper McCumbers had Pearson exit the vehicle and walk over to the area where field sobriety tests were being conducted. Pearson participated in the field sobriety tests and was thereafter arrested. Trooper McCumbers transported Pearson to the Medina Highway Patrol Post. There Pearson was asked to provide a urine sample, which Pearson agreed to do.

{¶5} Two complaints were filed in two separate cases alleging Pearson violated R.C. 4511.19(A)(1)(a) and 4511.19(A)(1)(j). Ultimately, the two cases were consolidated. Pearson filed a motion to suppress challenging: (1) the constitutionality of the checkpoint; (2) whether the field sobriety tests were conducted in substantial compliance with the National Highway Traffic Safety Administration standards; (3) whether there was probable cause to arrest Pearson; and (4) whether there was substantial compliance with Ohio Administrative Code regulations concerning the urine test. The matter proceeded to a hearing. During closing argument, Pearson's counsel focused on two issues: whether the checkpoint satisfied the fourth prong of the test articulated in *State v. Goines*, 16 Ohio App.3d 168 (2d. Dist. 1984) and whether there was substantial compliance with Ohio Administrative Code regulations concerning the urine test.

{¶6} Following the hearing, the trial court issued a judgment entry granting the motion to suppress. Therein, the trial court first evaluated whether *Goines* was the applicable test and determined that it was. The trial court then found that the State failed to establish compliance with the fourth *Goines* prong: "a predetermination by policy-making administrative officers of the roadblock location, time, and procedures to be employed, pursuant to carefully formulated

standards and neutral criteria." (Internal quotations and citation omitted.) *See Goines* at 171. In so doing, the trial court, despite admitting certain exhibits, appeared to question their evidentiary value because the witnesses did not have personal knowledge about the information contained in the exhibits. *See State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, ¶ 17 ("[T]he Rules of Evidence do not apply to suppression hearings."); *State v. Edwards*, 107 Ohio St.3d 169, 2005-Ohio-6180, ¶ 14 ("[J]udicial officials at suppression hearings may rely on hearsay and other evidence, even though that evidence would not be admissible at trial.") (Internal quotations and citation omitted.). Ultimately, the trial court concluded that the checkpoint did not "comport with applicable constitutional standards."

{¶7} The State has appealed, raising a single assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE MEDINA MUNICIPAL COURT ERRED IN FINDING THE OVI CHECKPOINT UNCONSTITUTIONAL AND SUPPRESSING EVIDENCE.

{¶8} The State argues in its sole assignment of error that the trial court erred in relying on the test in *Goines* in determining the constitutionality of the checkpoint; instead, the State contends that the trial court should have applied the test in *State v. Orr*, 91 Ohio St.3d 389 (2001). We agree.

{¶9} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as

true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*., citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶10} "The search and seizure provisions of the Ohio and United States Constitutions are implicated in this case because a vehicle stop at a highway checkpoint constitutes a 'seizure' within the meaning of the Ohio and United States Constitutions even though the purpose of the stop is limited and the resulting detention brief." *Orr* at 391.

{¶11} In concluding that *Goines* applied, the trial court looked to this Court's decision in *State v. Hirsch,* 9th Dist. Medina No. 13CA0025-M, 2014-Ohio-5388, for guidance. However, in *Hirsch*, this Court did not adopt *Goines* as the appropriate test. *See id.* at ¶ 11; *see also id.* at ¶ 19 (Carr, J., dissenting). This Court specifically noted that, "because of the limited nature of the State's arguments, this Court need not decide whether the *Goines* test has any application in evaluating the constitutionality of checkpoints." *Id.*

{¶12} In 2005, in *State v. Willard*, 9th Dist. Medina No. 04CA0045-M, 2005-Ohio-1627, this Court applied the test outlined in *Orr* in evaluating the constitutionality of a sobriety checkpoint. *See id.* at ¶ 19. That test examined the following three factors: "(1) the particular checkpoint's intrusion on privacy, (2) the state's interest in maintaining the checkpoint, and (3) the extent to which the checkpoint advances the state interest." (Internal quotations omitted.) *Id.*, quoting *Orr* at 392, citing *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444 (1990). While *Orr* involved a driver's license checkpoint, *see Orr*, 91 Ohio St.3d at 390, it nonetheless relied upon the test outlined in *Sitz*, a sobriety checkpoint case. *See Orr* at 393. Thus, "it is reasonable to conclude that the Ohio Supreme Court would apply the same test it articulated in *Orr*" in evaluating the constitutionality of a sobriety checkpoint. *Hirsch* at ¶ 10. This Court is

not inclined to adopt the test in *Goines,* a test which has only been adopted by some lower appellate courts in Ohio, when the Supreme Court has already set forth a test to evaluate the constitutionality of checkpoints. Thus, we conclude that the trial court erred in applying *Goines* to the facts of this matter.

{¶13} We note that, in its decision, the trial court concluded that Pearson "narrowed his challenge to the constitutionality of the sobriety checkpoint" to whether "the checkpoint [] failed to comply with prong four of the standard [in *Goines*.]" It is unclear to this Court whether the foregoing requires the conclusion that the trial court also found that Pearson did not preserve any challenge to the factors in the *Orr* test. Upon remand, the trial court shall determine whether Pearson preserved a challenge to the factors in *Orr,* and if so, evaluate whether the State satisfied the *Orr* test in the first instance. If applicable, the trial court must also evaluate any of Pearson's other preserved arguments concerning suppression.

{¶14} The State's assignment of error is sustained.

### III.

{¶15} The State's assignment of error is sustained. The judgment of the Medina Municipal Court is reversed and the matter is remanded for proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
CALLAHAN, J.
CONCUR.


APPEARANCES:

J. MATHEW LANIER, Prosecuting Attorney, for Appellant.

CHAD MULKEY, Assistant Public Defender, for Appellee.